# N THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

SAEL  MOH'D TUMA MUSTAFA )
)
     Movant, )
)
       v. )    No.  13-0048-CV-W-FJG
)    No.  09-00257-01-CR-W-FJG
UNITED STATES OF AMERICA, )
)
     Respondent. )

## <u>ORDER</u>

Currently pending before the Court is movant's motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Doc. # 1).

## I.     BACKGROUND

On August 12, 2009, Mustafa was indicted on one count of aiding and abetting mail fraud, in violation of 18 U.S.C.§§1341 and 1342. The Government charged Mustafa for his participation in a scheme which involved stolen credit card information that was used to purchase gift cards from several businesses.  On January 20, 2010, Mustafa pleaded guilty without a plea agreement to the indictment.  The Pre-Sentence Report set Mustafa's base offense level at seven under the U.S. Sentencing Guidelines and recommended seven enhancements based on various facts related to the crimes. At the initial sentencing hearing, the Court heard testimony that Mustafa used a computer to gain administrative access to commercial websites.  Mustafa then downloaded personal information regarding various customers.  This personal information was then used to access the customer's credit and debit card accounts.  The government presented evidence that Mustafa and others then stole from the customer's accounts through wire

transfers and purchased gift cards and airline tickets. On July 8, 2011, the Court found that the PSR's enhancements were supported by a preponderance of the evidence presented at the April 2011 hearing. The Court calculated Mustafa's guideline range at 168 to 210 months, but then varied downward and sentenced Mustafa to 120 months imprisonment. Mustafa was also ordered to pay $25,036.26 in restitution. Mustafa appealed his sentence, arguing that the district court erred by applying a preponderance of the evidence standard when determining relevant conduct for purposes of sentencing enhancements. On September 24, 2012, the Eighth Circuit denied his appeal. United States v. Mustafa, 695 F.3d 860 (8th Cir. 2012).

## II. STANDARD

28 U.S.C. § 2255 provides, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The district court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. "Accordingly, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994) (citing Larson v. United States, 905 F.2d 218, 220-21 (8th Cir. 1990), cert. denied, 507 U.S. 919, 113 S.Ct. 1278, 122 L.Ed.2d 672 (1993)).

Our analysis of the ineffectiveness claims is governed by Strickland v.

Case 4:13-cv-00048-FJG   Document 27   Filed 11/24/15   Page 2 of 23

Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to succeed on an ineffectiveness claim, Mustafa must show "both deficient performance by counsel and prejudice." Id. at 687-88.  In Johnson v. U.S., 860 F.Supp.2d 663 (N.D.Iowa 2012), the Court stated:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland], 466 U.S. at 688, 104 S.Ct. 2052. . . . The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052. Harrington v. Richter, 562 ,U.S. 86, 104, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011); Premo v. Moore, 562 U.S. 115, 121-122, 131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011) (quoting Richter).  Also, the court " 'must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." ' " King [v. United States,595 F.3d 844,] 852–53 (quoting Ruff v. Armontrout, 77 F.3d 265, 268 (8th Cir.1996), in turn quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052). There are two substantial impediments to making the required showing of deficient performance. First, " '[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' " United States v. Rice, 449 F.3d 887, 897 (8th Cir.2006) (quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " Id. (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052); Davis v. Norris, 423 F.3d 868, 877 (8th Cir.2005) ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance.")

Id. at 741.  In United States v. Orr, 636 F.3d 944, 952 (8th Cir.) cert.denied, 132 S.Ct. 758 (2011), the Court stated, "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." However, as noted in Armstrong v. Kemna, 534 F.3d 857 (8th Cir. 2008), "[o]n the other hand, strategic choices resulting from lack of diligence in preparation and investigation

3

[are] not protected by the presumption in favor of counsel." Id. at 864-65 (internal citations and quotations omitted).

In Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court held that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Id. at 58, 106 S.Ct. 366. The performance prong of Strickland requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" 474 U.S. at 57, 106 S.Ct. 366 (quoting Strickland, 466 U.S.at 688, 104 S.Ct. 2052). The prejudice prong requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hill, 474 U.S. at 57. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 132 S.Ct. 1376,1384, 182 L.Ed.2d 398 (2012).

### III.    DISCUSSION

#### A. Ground 1 - Ineffective Assistance of Counsel – Failing to Properly Advise Movant Relative to Pleading Guilty

Mustafa argues that his counsel had the constitutional responsibility to be aware of the sentencing guidelines and to advise him regarding how they could impact his decision to plead guilty. Mustafa argues that his counsel had a duty to inform him of how the monetary amount of the alleged losses would translate into substantial increases in his guideline offense level. Mustafa alleges that his counsel had this information at his disposal, but yet failed to fully inform him of how this would affect his sentence. Despite his representations at the sentencing hearing that he had been fully informed of the charges against him and had spoken with his attorney and understood

4

the consequences of pleading guilty, Mustafa now alleges that his attorney misrepresented the facts to him, so he did not fully understand the consequences of pleading guilty.

In opposition, the Government argues that Mustafa must demonstrate that he would have been acquitted at trial, or would have received a better outcome had he chosen not to plead guilty. However, the Government argues that Mustafa has failed to make any such showing and does not discuss the prejudice aspect of his claim. Additionally, the Government notes that the Guideline enhancements would have been applied regardless of whether Mustafa pleaded guilty or was convicted. The Government also notes that Mustafa received a benefit by pleading guilty, he received a 3 point reduction to his offense level due to his acceptance of responsibility. The Government also notes that during the change of plea, Mustafa was advised of the sentencing guideline range, he stated that he was satisfied with his counsel, that his counsel had done everything he had requested and that his counsel had discussed the discovery with Mustafa and also the relative merits of pleading guilty.

Q. (By the Court) Mr. Mustafa, are you satisfied with
  the representation Mr. Pickett has provided to you?
A. Yes, Your Honor.
Q. Has he failed or refused to do anything you asked him
  to do?
A  No, Your Honor.
Q. The Court:  Mr. Pickett, have you shared any discovery made available to you by the
  government in this case?
Mr. Pickett: We have discussed all the discovery I have seen. I have gone over it in
  person with him. We have talked about it and he has seen the things that he needs
  to see, yes.
Q. (By the Court) Do you recall those discussions, Mr. Mustafa?
Mr. Pickett: Do you recall those discussions we talked about, about what they have
  against you?
A  The Defendant: Yes, Your Honor.
Q.  The Court: Okay. And have you discussed with Mr. Mustafa, Mr. Pickett, the relative

5

merits of pleading guilty versus going to trial on this matter?

Mr. Pickett: Are you confused?

The Court: I'm asking you, have you discussed that with him?

Mr. Pickett: Oh yes, Judge. I'm sorry. I have.

Q. (By the Court) And I'll ask Mr. Mustafa now if he recalls the discussions that he had with Mr. Pickett about whether or not it's in his best interest to go to trial or plead guilty to this charge. Do you recall those discussions?

A. Yeah.

Q. And you just heard your counsel outline the statutory range of punishment for this offense, do you recall that, just a moment ago?

A. Yes, Your Honor.

Q. Is it consistent with what you were told prior to today?

Mr. Pickett: Consistent means is what I indicated here earlier similar to what I told you when I first met you?

A. Yes, Your Honor.

Q. (By the Court) Okay. And having had those discussions with your counsel about the evidence the government would present against you at trial, whether or not it's in your best interest to plead guilty or go to trial, knowing the statutory range of punishment for this offense, have you decided which course of action you want to take here today; that is, plead guilty or go to trial?

A. I want to plead guilty, Your Honor.

Q. The Court: And we have no written plea agreement; is that correct, Mr. Pickett?

Mr. Pickett: We do not, Judge.

(Transcript of Change of Plea Hearing, pp 5-7).

. . .

The Court: And, Mr. Pickett, have you discussed with your client the concept of the presentence report and how that report would be used by the court in fashioning its sentencing decision?

Mr. Pickett: Yes, I have done that before, Judge, and we did that again today right before court.

Q. (By the Court) Any questions about that, Mr. Mustafa?

A. No, Your Honor. Thank you.

The Court: Have you also discussed with him, Mr. Pickett, the advisory sentencing guidelines and how they would be used by this court in making its sentencing decision?

Mr. Pickett: I have talked to him both about the guidelines and where we think the guidelines might fall in this case, although at this point it's a guessing game, and how this court in particular would use those as a guide, but not the sole way of sentencing, yes.

The Court: You talked about 18 U.S. Code, Section 3553, and how it plays a role in that process as well?

Mr. Pickett: Yes.

Q. (By the Court) Do you recall those discussions, Mr. Mustafa?

Case 4:13-cv-00048-FJG   Document 27   Filed 11/24/15   Page 6 of 23

A.      Yes.
Q.      Any questions about that?
A.      No.

(Change of Plea Transcript, pp. 9 – 10).
. . .
The Court: Mr. Mustafa, have you understood everything that we have talked about so
          far?
The Defendant: Yes, Your Honor.
The Court:  Do you have any questions about anything?
The Defendant:  No, thank you.
The Court: Is it still your decision to plead guilty to this offense?
The Defendant: Yes, Your Honor.
. . .
The Court: I didn't ask you this earlier, Mr. Mustafa, but let me ask you now since I have
          stated it. Has anybody threatened you or forced you to come into court and
          plead guilty to this offense today?
The Defendant: No, Your Honor.
The Court: You do that of your own free will?
The Defendant: Yes, Your Honor.

(Change of Plea Transcript, pp. 16-17).

       In his reply suggestions, Mustafa argues that at the Change of Plea Hearing, he

agreed that he was pleading guilty to the time frame from when he entered the United

States in January 2009 to April 15, 2009.  Mustafa argues that based on this

representation, there is at least a "reasonable probability" that any plea agreement

would have limited his sentence exposure to that time frame.  However, he argues that

at sentencing, he was held responsible for "relevant conduct" for monetary losses

outside the dates to which he pled guilty.  Mustafa argues that to the extent he was held

responsible for the losses outside the above time frame, his plea was not knowingly

entered into.  (Movant's Reply Suggestions, p. 5).  Mustafa argues that he had no idea

of the concept of "relevant conduct" and had every reason to believe that the January –

April time frame was the extent of his criminal liability, especially since his counsel did

not advise him otherwise.

7

In United States v. Liggins, No. 4:12-CR-3057, 2015 WL 1781489, *4 (D.Neb. Apr. 20, 2015), the Court rejected a claim of ineffective assistance of counsel where the defendant was repeatedly informed of the maximum possible punishment and the Court's ability to sentence her within that range. The Court rejected the defendant's claim that her plea could not be knowing and voluntary stating that "[a]ny information omitted by counsel was fully supplied to the defendant through the plea process, and the Court explicitly informed the defendant of the potentially applicable sentences during the plea colloquy; as a result, the defendant has not shown Strickland prejudice."

Similarly, in this case, Mr. Pickett stated that he had explained the sentencing guidelines to the defendant and how they would be used in sentencing. The Court also asked Mustafa multiple times if he understood the proceedings or had any questions about what had been discussed. Mustafa indicated that he understood the proceedings and the relative merits of entering a guilty plea. Additionally, during the Change of Plea Hearing, the Government clarified that the indictment had charged Mustafa with aiding and abetting others and that this included the time period before he entered the United States:

Mr. Wolesky:   Well, I would note that the indictment does note aiding and abetting each other and others as far as the time frame. There were periods of time that I could outline in more detail, obviously when he was in Jordan working with the individuals at that residence there, specifically Rosemary Evola who resided in the Western District of Missouri prior to his joining in the Western District of Missouri. So the government's evidence would be that he had engaged in this conduct both while in Jordan as well as while he was here in the Western District of Missouri to commit the crimes described in this indictment, as far as a clarification of his aidng and abetting charge.

. . .

The Court:   Mr. Mustafa, have you understood everything that we have talked about so far?

8

The Defendant: Yes, Your Honor.

The Court: Do you have any questions about anything?

The Defendant: No, thank you.

The Court: Is it still your decision to plead guilty to this offense?

The Defendant: Yes, Your Honor.

 .  .  .

The Court: Anything further?

Mr. Wolesky: Yes, just one thing, Judge, and I think it's kind of implied, but I think it would be prudent at this point to make a record of it, is that both with Mr. Pickett as well as Mr. Mustafa's previous attorney, Federal Public Defender Bob Kuchar, this side of the investigation is ongoing. There are numerous other charges as I have kind of hinted at in the factual basis of this. We have had numerous discussions, so this isn't a surprise to Mr. Pickett. We have talked about this for a while, that the government is pursuing – will be pursuing additional charges related to this investigation for the other parts of this case, specifically the computer hacking and the wire fraud and other aspects of it. And I think that I would just like that to be part of the record, that he understands that by pleading guilty without an agreement today –

The Court: You mean other charges potentially against him?

Mr. Wolesky: Yes, and others.

The Court: Is that correct, Mr. Pickett?

Mr. Pickett: That has been stated.  Mr. Mustafa's position has always been that he will plead guilty to what he has seen and what he is charged with and that he will cooperate with the government. That hasn't been able to occur because there's a new policy apparently, and I'm not quite sure I understand it yet, but he's trying to enforce - - or have his detention hearing and, therefore, he's not able to cooperate.

The Court: You understand this, Mr. Mustafa?

The Defendant: Yes, sir.

The Court: And you're willing to plead under those conditions today?

The Defendant: Yes, Your Honor.

The Court: I'm sure you'll work it all out in the long run. Anything further?

Mr. Wolesky: No, Your Honor.

The Court: Thank you.

(Transcript of Change of Plea Hearing, pp. 15-19).

Therefore, the Court finds that Mustafa has failed to show that he would not have plead guilty and would have insisted on going to trial, absent counsel's alleged misinformation. See also, United States v. Quiroga, 554 F.3d 1150, 1155 (8th Cir.) cert.denied, 556 U.S. 1228 (2009)(there is "abundant circuit precedent holding that inaccurate advice of counsel about the sentencing guidelines . . .does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range."); Tinajero-Ortiz v. United States, 635 F.3d 1100 (8th Cir.) cert.denied, 132 S.Ct. 315 (2011)(same). Accordingly, the Court finds that movant has failed to show that his counsel's actions fell below an objective standard of reasonableness or that he suffered any prejudice regarding counsel's advice relative to pleading guilty.

**B. Ground 2 -Ineffective Assistance – Failing to Pursue a Cooperation Agreement**

Movant argues that from the beginning of this case, he expressed his desire to cooperate with the Government, but his counsel failed to pursue a cooperation agreement. Movant asserts that if his counsel had negotiated an agreement for him, there is a reasonable probability that he would have received a lesser sentence.

In response, the Government states that they were interested in speaking to movant

10

to determine what information movant could provide to them. However, the Government states that it believed that Mustafa was the highest level target in the computer hacking scheme to defaud and was skeptical that he would be able to provide them with useful information. The Government states that it informed Mustafa's counsel that he could only earn substantial assistance by identifying higher level targets who could be prosecuted by the Government, not by identifying lower members of Mustafa's conspiracy that were already known. The Government notes that Mustafa did not provide any document that spelled out the information he would have provided as part of a proffer, nor has he given a sworn affidavit detailing his knowledge of the offenses or other defendants. The Government also notes that Mustafa has not shown how any information he could have provided would have been credible. Thus, the Government argues that Mustafa has failed to show with any reasonable probability that the outcome would have been beneficial. In reply, Mustafa argues that if the Government was "extremely skeptical" of his ability to provide substantial assistance, then why did the Government in memos dated September 22, 2009 and December 22, 2009 express a desire for his cooperation. Mustafa argues that "surely if counsel had performed effectively in assuring the above cooperation, the Government would have provided sentencing consideration."

A closer reading of the two memos however does not show that the Government was seeking Mustafa's cooperation. Rather, in the September 22, 2009 memorandum, Government counsel states, "I told [Mustafa's former counsel] that I was interested in listening to Mustafa, but wanted to see what the RCFL was able to find on his computers first and consult with their forensic examiners. . . .I was expecting to

schedule a proffer with Mustafa in the next week or so." In the December 22, 2009, memorandum, Government counsel stated, "[r]egarding cooperation, I am willing to sit down with you and my supervisor to discuss the issues surrounding this, and see if there are any options available to Mustafa. If you client does plead guilty to the current indictment, at this time, *it would have to be without any agreement* from the United States. Therefore, he may face charges relating to the other crimes I held back initially down the road. As I stated, I held these charges back at Mustafa's request, but they are still there and will be prosecuted." (Doc. # 67-1, p. 2)(emphasis added). In the December 2009 memorandum, the Government makes it clear that although they were willing to listen to what Mustafa had to say, they would not be offering any plea agreement. Thus, because the Government memorandums show that they were unwilling to offer any plea agreement, Mustafa's counsel cannot be found deficient for failing to pursue an agreement that the Government was unwilling to offer. Additionally, during the Change of Plea hearing, Mr. Pickett stated that it was his client's position that he was willing to cooperate with the government, but because he had sought to have a detention hearing, the Government was not willing to cooperate with Mustafa. This makes clear that it was Mustafa's actions which prevented a plea agreement from being negotiated and not actions or inactions of his counsel.

In Burgos-Valdez v. United States, No. Civ. 13-4047, 2015 WL 1189558 (D.S.D. Mar. 16, 2015), a case with similar facts, the defendant alleged that his counsel failed to communicate the Government's invitation to cooperate. The Court in that case found that the defendant had failed to show that he suffered prejudice because the government never extended a plea offer. The Court stated:

Here, the government *never* made a plea offer. Instead, the government invited Mr. Burgos-Vadez to make a proffer--to "debrief"--with the government: to meet with the government and give a complete and truthful statement about Mr. Burgos-Vadez's knowledge of the drug conspiracy. . . .The government specially stated when it extended this invitation that it was not promising to extend a plea offer, and that it was not obligated to make a plea offer to Mr. Burgos-Valdez after the debrief. . . .Instead, all the government promised is that it would evaluate Mr. Burgos-Valdez's information from the debrief and determine whether the government wished to extend a plea offer at all to Mr. Burgos-Valdez. . . . Because no plea offer was ever made by the government, no sentencing recommendation was made by the government as part of a plea agreement. . . . This is fatal to Mr. Burgos-Valdez's attempt to prove prejudice. As stated above, in order to show prejudice under these circumstances, Mr. Burgos-Valdez must show: (1) that there is a reasonable probability that he would have accepted the earlier plea offer if he had been afforded effective assistance of counsel in evaluating that offer; (2) that he would have entered a plea before the government withdrew the offer or the district court refused to accept the plea; and (3) there is a reasonable probability that the end result of the criminal process would have been more favorable by reason of his plea, either because his conviction would have been to a lesser charge or because his sentence would have been less. Frye, 132 S.Ct. at 1409. Here Burgos-Valdez cannot show any of these three elements. He cannot show that he would have accepted a plea offer because none was ever made. He cannot show that he would have pleaded guilty before the government withdrew the agreement or the district court refused to accept the agreement because no agreement was ever extended. Finally, and most speculatively, Mr. Burgos-Valdez cannot show that the sentence he actually received – 240 months - was more than the sentence he would have received if he had accepted the plea agreement.

Id. at *5-6.

In the instant case, similar to Mr. Burgos-Valdez, Mustafa cannot show that he would have accepted a plea offer, because the Government never extended such an offer to him. He cannot show that he would have pleaded guilty before the government withdrew the agreement or the court refused to accept the agreement, because again there was never any agreement. Finally, he cannot show that the sentence he received, 120 months, was more than the sentence he would have received if he had

13

accepted the plea agreement, because there was never any agreement extended and it would be speculative to guess as to what sentence the Government would have recommended. Accordingly, because the Court finds that Mustafa has failed to show that his counsel's actions below an objective standard and because he has failed the show that he suffered prejudice, the Court **DENIES** movant's motion for relief on this ground.

### C. Ground 3 - Ineffective Assistance – Failing to Conduct Reasonable Investigation

Mustafa argues that his counsel was ineffective because he did not argue certain facts to the Court such as the fact that he would have been eligible for a downward departure under U.S.S.G. § 5K2.0 because he was willing to waive deportation. Additionally, he argues that his counsel failed to adequately argue the extent of his responsibility for the underlying criminal offenses under the guideline "relevant conduct." Mustafa argues that he was held responsible for the monetary amount of the entire scheme, even though others such as Carrie Evola admitted that they also engaged in hacking and the government was never able to identify any IP addresses in Jordan that could be linked to the victims in this case. Mustafa also argues that he should not have been held liable for the full amount of the losses because it was not reasonably foreseeable. He states that his counsel failed to adequately develop this argument. Mustafa argues that his sentence was enhanced for the use of a minor in the commission of the offense, even though he had no contact with the minor. He argues that if his counsel had performed adequately, there is a reasonable probability that his sentence would have been different.

In opposition, the Government argues that his counsel was not ineffective for failing

14

to argue for a downward departure, because Mustafa pled guilty to an aggravated felony and he would not have been entitled to a hearing to contest the deportation. Additionally, the Government argues that Mustafa cannot show prejudice, because the Court already substantially departed from the sentencing guidelines.

With regard to Mustafa's claim that his counsel did not adequately argue that he played a lesser role in the scheme, the Government notes that the testimony Mustafa cited was taken out of context and there was ample other testimony regarding Mustafa's role in the scheme and how others observed Mustafa hacking into computers from an internet café in Jordan. Additionally, the Government notes that there was testimony from Carrie Evola detailing how Mustafa asked her brother if he knew any individuals who were willing to have money transferred into their accounts. Rosemary testified that in response to Mustafa's request, her brother sent over the names and bank account numbers of minors who were friends of her nephew. The Government argues that it presented a large amount of evidence through testimony and exhibits at the sentencing hearing which Mustafa's counsel countered through cross-examination and argument. The result of which resulted in a significant downward departure. Accordingly, the Government argues that Mustafa has failed to show that his counsel was ineffective in failing to investigate or that this resulted in prejudice to him.

The Court agrees and finds that Mustafa has failed to show that his counsel conducted an inadequate investigation. With regard to his first point that his counsel failed to seek a departure under U.S.S.G. § 5K2.0 based on his willingness to consent to deportation, this assertion is incorrect. In U.S. v. Ortega, No. 5-10-CR-50106, 5:12-CV-5200, 2013 WL 695011, (W.D.Ark. Jan. 31, 2013), the Court stated:

> [t]he Eighth Circuit has held that departures for waiver of deportation rights may be warranted in some circumstances. . . .However, failure to move for a downward departure would not, per se, constitute ineffective assistance of counsel. . . .The Defendant must demonstrate that he had a colorable, non-frivolous defense to deportation. See U.S. v. Ramirez-Marquez, 372 F.3d 935, 938 (8th Cir.2004)(We hold a defendant seeking a downward departure for waiving deportation must demonstrate a colorable, non-frivolous defense to deportation and show a waiver of that defense would substantially assist the administration of justice).

Id. at *2 (internal citations omitted). As noted by the Government, Mustafa pled to an aggravated felony and most aliens who are convicted of aggravated felonies are subject to expedited removal. The Court agrees and finds that Mustafa has failed to allege that he would have a non-frivolous defense to deportation. As noted by the Court in The Court agrees and finds that Mustafa has failed to allege that he would have a non-frivolous defense to deportation. As noted by the Court in Ortega, "[i]t cannot be ineffective assistance not to raise a meritless argument." Id. at *3 (citing Larson v. U.S., 905 F.2d 218, 219 (8th Cir.1990)).

With regard to the second point raised, that Mr. Pickett did not attempt to minimize Mustafa's role in the overall scheme or argue that others were equally involved, is incorrect. Mr. Pickett, cross-examined the witnesses which were presented during the sentencing hearing, he also filed a seven-page brief in response to the Government's supplemental sentencing memoranda. Additionally, at the sentencing hearing, Mr. Pickett stated:

> Mr. Pickett: I don't believe you're mistaken at all, Judge, of course, but one preliminary matter I would want to reiterate, this has gone on for some time, and I want to make sure for the record that the aspects of some of the relevant conduct from defense counsel's perspective and, I believe, also from my defendant's perspective was that a great majority of the discovery being relied on at this time, especially things overseas and airplane tickets and all of those types of things, which lead to a great amount of the enhancement as far as the loss, which is the most important

16

enhancement in some regards here, all came to us after we pled. And I just want to make sure that was clear on the record and the court understood that.

　　That was brought up earlier at the first sentencing hearing, not the second element of the arguments, but I think in this particular case that's the biggest issue I had with - -well, one of the big issues. But that's a big issue I had with my client not having knowledge of that because the knowledge of relevant conduct does goes to what he knew, especially in the situation here where there's not a conspiracy or a scheme where other people are charged. And I think in this particular instance, Judge, the big - -the gravest breach against my client's rights in this particular case, I believe, was the fact that we got all that discovery afterwards and after we had already pled and one of the reasons we're arguing against it so vehemently.

(Sentencing Transcript, pp. 4-5). Thus, the Court finds that contrary to Mustafa's assertions, Mr. Pickett was aware of and did vigorously argue against the use of the relevant conduct as an enhancement to the sentence. However, even if the Court determined that Mr. Pickett's actions and arguments were ineffective, Mustafa cannot show that he was prejudiced. The sentence which the Court ultimately imposed was substantially reduced from what the Government had requested and from what the sentencing guidelines suggested. Accordingly, because the Court finds that Mustafa has failed to show that his counsel was ineffective for failing to conduct an adequate and reasonable investigation, the Court hereby **DENIES** Mustafa's Motion for Relief pursuant to Ground 3.

### D. Ground 4 - Ineffective Assistance on Appeal

Mustafa argues that his counsel was ineffective on appeal because the only issue that he raised was that the district court erred in applying a preponderance of the evidence standard when determining Mustafa's relevant conduct. Mustafa argues that since 2005, courts have held that due process never requires more than a preponderance of the evidence standard for finding sentencing facts. Mustafa argues

17

that instead, his counsel could have raised any of the issues presented in Grounds 1-3 above.

In response, the Government argues that Mustafa has not shown that any sentencing guideline issues would have been successful. The Government notes that after the first sentencing hearing, the Court ordered a full second legal briefing regarding its authority to consider relevant conduct. After reconvening and hearing again from the parties, the Court determined it could consider the relevant conduct presented and applied the sentencing enhancements. The Government argues that Mustafa has not shown that the Court misapplied the sentencing guidelines.

The Court agrees and finds that Mustafa has not shown that his counsel was ineffective for failing to raise any other issues on appeal. As discussed above, the Court finds that the other issues which Mustafa asserts his counsel should have raised on appeal, have no merit. Even if the Court were to find that failing to raise the other issues was ineffective, Mustafa has not shown that he was prejudiced. The Government had argued for a 180 month sentence. The PSR recommended that the Court sentence Mustafa to between 168 and 210 months. On July 8, 2011, the Court departed substantially from both of these recommendations and instead sentenced Mustafa to a sentence of 120 months, or 48 months below the lowest recommendation. Accordingly, because Mustafa has not shown that there is reasonable probability that the Eighth Circuit would have vacated his sentence had Mr. Pickett raised different arguments on appeal, the Court hereby **DENIES** Mustafa's Motion for Relief Pursuant to Ground 4.

### E. Ground 5 - Ineffective Assistance – Failing to Raise Issue of Illegal Search & Seizure

Mustafa argues that on April 15, 2009, two Fourth Amendment violations occurred. Frist, mail which was addressed to other parties was opened and evidence obtained thereby without a search warrant. Second, a search of the residence where Mustafa resided was also conducted and computers and other evidence were seized. On July 22, 2009, a seizure of Mustafa's passport and permanent residence card occurred. Mustafa states that at that time he was not under arrest and there is no recognized exception to the warrant requirement. Mustafa argues that his counsel was ineffective for failing to raise these issues both in the district court and on appeal.

In opposition, the Government states that Mustafa's illegal search and seizure claims are barred by his unconditional guilty plea. "The general rule is that a valid guilty plea waives all non-jurisdictional defects. Stated differently, a valid guilty plea forecloses an attack on a conviction unless on the face of the record the court had no power to enter the conviction or impose the sentence." United States v. Beck, 250 F.3d 1163,1166 (8th Cir.2001)(internal citations and quotations omitted). In Reeves v. United States, No. 4:12CV927CDP, 2013 WL 3353941 (E.D.Mo.July 3, 2013), the Court stated "[n]one of Reeves' claims regarding the search warrant and underlying criminal investigation raise jurisdictional issues. By entering his unconditional guilty plea, Reeves waived all nonjurisdictional challenges to the prosecution of his case, including all claims on search and seizure grounds." Id. at 3 (internal citations and quotations omitted).

The Government argues that even if Mustafa had not waived his claims relating to alleged search and seizure violations, his claims would not be successful. First, the

Government states that Mr. Pickett was not ineffective for failing to challenge the search of the mailing sent by Hy-Vee to Carrie Evola and Vince Evola or the search of the residence. A search of the parcels sent to Carrie and Vince Evola was not illegal, because the Postal Inspector obtained the consent of Hy-Vee, the sender, to open and search the parcels. "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041,36 L.Ed.2d 854 (1973). With regard to a search of the residence, the Government argues that the officers who conducted the search had a warrant and it listed several of the items which were taken. The Government argues that Mustafa fails to specify what items were seized which were not encompassed by the search warrant.

With regard to his passport and permanent residence card, the Government argues that the police never seized these items. Rather, the Government states that it has addressed this issue in a response filed to Mustafa's Motion for Return of Property (Crim. Doc. # 104). The Government states that the items were in the possession of an attorney for a co-defendant and were in fact turned over to the Pretrial Services Office. Thus, because the items were never seized, they was no unlawful seizure and Mr. Pickett cannot be found ineffective for failing to raise this issue.

The Court finds that Mustafa has failed to establish that his counsel was ineffective for failing to challenge either the search of the envelopes sent by Hy-Vee or the search of the residence. As noted by the Government, Hy-Vee provided United States Postal Inspection agents with consent to search an envelope containing gift cards which had been fraudulently purchased and were to be delivered from Hy-Vee to

20

405 N.W. 65th Street, Gladstone, Missouri. Thus, because the agents had consent from the sender, the search was valid. With regard to the search warrant for the residence, the Complaint states that a search warrant was served on 405 NW 65th Street, Gladstone, Missouri on April 15, 2009. Additionally, during the sentencing hearing, the U.S. Postal Inspector testified that a state search warrant was issued in Clay County, Missouri. During the search warrant, several items were recovered including four computers, a ledger, express mail envelopes, postal envelopes, phone cards, international calling cards, flight vouchers and airline information. U.S. Postal Inspector Mezzanotte testified that he received a call in April 2009 from a detective with the Gladstone Missouri police department. The detective told inspector Mezzanotte that Hy-Vee had noticed several credit cards being mailed and delivered to 405 NW 65th Street, Gladstone, Missouri. Hy-Vee had been able to determine that the cards were purchased with stolen credit card accounts. It was decided that the next time an order was placed, Hy-Vee would have the cards sent to Inspector Mezzanotte and they would then monitor the cards as they were delivered to the residence and then execute a search warrant for the residence. (Sentencing Transcript, pp. 66-68). Therefore, because a warrant existed and the items seized related to the crime which was being investigated, the Court finds that there was no illegal search or seizure. Accordingly, Mustafa's counsel was not ineffective for failing to argue this point either in the district court or on appeal.

With regard to Mustafa's passport and permanent residence card, the Court finds that Mustafa has not shown that these items were ever seized. At Mustafa's bond hearing, the Government represented that the attorney for a co-defendant, Michael

Kelly had Mustafa's passport. The Government states that Mr. Kelly was contacted and he informed the Government that the day after the bond hearing, on December 10, 2009, he hand-delivered an envelope containing Mustafa's passport, green card and a library card to the United States Pretrial office. Mr. Kelly provided the Government with a copy of a handwritten note which was located in his files which confirmed this fact. (Doc. # 118,Exhibit 1). The Government has also inquired of Mr. Hecke with Pretrial Services. However, Mr. Hecke informed the Government that he did not have any record of the passport in his file nor could the items be located in his office. The Government also inquired of Sean Pickett, Mustafa's trial counsel as to the items. However, he did not have these items nor did he have a specific memory of who had them. The Court finds that Mustafa has not shown that these items were ever in the Government's possession, accordingly there was no illegal seizure of these items.

Therefore, because the Court has found that there was no illegal searches or seizures of the packages, the house or Mustafa's passport or residence card, any argument raising these issues would have been futile. The Eighth Circuit has held that counsel cannot be found ineffective for failing to file a futile motion. Dowty v. U.S., No. 13-3022-RAL, 2014 WL 1668336, *5 (D.S.D. Apr. 25, 2014); Hale v. Lockhart, 903 F.2d 545, 549 (8th Cir.1990).

Accordingly, the Court hereby **DENIES** Mustafa's Supplemental Claim for Relief – Ground 5 – Failing to Raise Issue or Illegal Search and Seizure.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Mustafa's Motion to Vacate, Set Aside or Correct His Sentence on all grounds. No evidentiary hearing will

be held in this matter because the issues raised are resolvable by the record.

Furthermore, movant will be denied a motion for certificate of appealability. Under 28

U.S.C. § 2253(c)(2), "[a] certificate of appealability may issue under paragraph (1) only if

the applicant has made a substantial showing of the denial of a constitutional right."

The Court finds that the issues raised by movant do not meet this criteria.


Date: <u>November 24, 2015</u>                                        **<u>S/ FERNANDO J. GAITAN, JR.</u>**
Kansas City, Missouri                                         Fernando J. Gaitan, Jr.
                                                                       United States District Judge